MARGARET A. MCLETCHIE
Nevada Bar No. 10931
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Attorney for Plaintiff Nebyou Solomon*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEBYOU SOLOMON, an individual,<br><br>    Plaintiff,<br>  vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; JOSEPH LOMBARDO, individually and in his official capacity as Sheriff; JOHN L. PELLETIER, an individual; RICHARD E. MAUPIN, an individual; RYAN J. FRYMAN, an individual; JUAN D. CONTRERAS, an individual; ALLEN J. PAVESE, an individual; BRANDON M. MEADS, an individual; FASHION SHOW MALL, LLC, a Nevada limited-liability company; ROE SECURITY COMPANY, a Nevada corporate entity; DOE SECURITY GUARDS I – III, and individuals,<br><br>    Defendants. | Case. No.:<br><br>**COMPLAINT** |

Plaintiff NEBYOU SOLOMON, an individual, files this Complaint for damages and declaratory relief pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (creation of remedy), and 28 U.S.C § 1367 (supplemental jurisdiction), and hereby alleges and complains as follows.

/ / /

1

# I.  NATURE OF THE ACTION

On April 15, 2017, protestors held a rally on the north sidewalk of Fashion Show Drive, directly outside the Trump International Hotel in Las Vegas, Nevada. Plaintiff NEBYOU SOLOMON, a professional photojournalist, was assigned to film this event on behalf of KLAS-TV. As MR. SOLOMON set up his equipment on the public sidewalk across the street from the protest, three Fashion Show Mall security guards demanded that he leave.

MR. SOLOMON politely refused to leave, informing the security guards that the First Amendment protects his right to film in public forums such as sidewalks. The security guards insisted that the sidewalk was private property. To settle the disagreement, MR. SOLOMON waved over a Las Vegas Metropolitan Police Department ("Metro") officer, assuming that the officer would vindicate his right to be on the public sidewalk and do his job. Indeed, just a month earlier, a Metro Lieutenant had informed MR. SOLOMON that if an area is open to the public, the media cannot be denied access.

Contrary to MR. SOLOMON's expectations—and law that has been clearly established for years—the Metro officer sided with the Fashion Show Mall security guards. Rather than adhere to the law, Metro officers—including supervisors—then worked with Fashion Show Mall security guards to violate MR. SOLOMON's constitutional rights to free speech and freedom of the press, and his right to be free of illegal arrest and detention. Without any reasonable suspicion, Metro officers handcuffed MR. SOLOMON and escorted him to a nearby patrol car. Without any probable cause, the officers shackled and arrested MR. SOLOMON in front of hundreds of protestors, many of whom chanted "let him go!" The officers locked MR. SOLOMON in a police van, and waited until the protest had ended to escort MR. SOLOMON to jail. After MR. SOLOMON's eventual release from jail, the Clark County District Attorney's office declined to pursue charges against MR. SOLOMON.

The Fashion Show Mall security guards' unlawful demands that MR. SOLOMON leave a public forum—and Metro officers' carrying out those demands on their behalf—

violated several of MR. SOLOMON's constitutional rights. They violated his First Amendment rights to freedom of the press and freedom of speech. They also violated his Fourteenth Amendment rights to substantive and procedural due process and equal protection of the law. The illegal harassment, arrest, and detention of MR. SOLOMON caused him humiliation and embarrassment. Metro's decision to arrest MR. SOLOMON and treat him like a common criminal has negatively impacted the ability of MR. SOLOMON to get work and has cast him in a false light.

The actions of the defendants in this case are especially egregious in light of the fact that it has long been established that public sidewalks—including those on or near the Las Vegas Resort District—are open to the public. Metro has been repeatedly sued for the very type of behavior it engaged in in this case—siding with private property owners in the Las Vegas Resort District—and should know better by now.

Plaintiff is entitled to damages, costs, and attorney's fees, punitive damages, and any other relief as a victim of civil rights violations and of tort damages.

## II.  JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 *et seq.* for civil claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this Court has original subject matter jurisdiction over MR. SOLOMON's claims brought under 42 U.S.C. § 1983.

2.      Jurisdiction is conferred on this Court by 28 U.S.C § 1367 for civil claims arising under the Constitution and laws of the State of Nevada. Pursuant to § 1367, this Court has supplemental jurisdiction over MR. SOLOMON's state law claims.

3.      The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award MR. SOLOMON damages pursuant to 42 U.S.C. § 1983. Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C. § 1988(b).

4.      The Defendants acted, purported to act, and/or pretended to act in the performance of their official duties, and thus each of the Defendants acted under color of

law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983.  *See McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

5.     Because the individual Defendants are not arms of the State, this suit is not barred by the Eleventh Amendment to the U.S. Constitution.  *See Eason v. Clark County School*, 303 F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

6.     The acts or omissions giving rise to MR. SOLOMON's claims all occurred in Clark County, Nevada and all parties reside or operate in Clark County, Nevada.  Thus, pursuant to 28 U.S.C.A. § 1391(b)(2) and 28 U.S.C.A. § 1391(c), venue is proper in the United States District Court for the District of Nevada.

### III. PARTIES

7.     Plaintiff NEBYOU SOLOMON is a resident of Clark County, Nevada. He is a photojournalist of Ethiopian descent who at the time of the events described herein was employed by KLAS-TV.

8.     As part of MR. SOLOMON's job, he frequently utilizes public spaces, such as sidewalks, to set-up his video equipment and record newsworthy events.

9.     Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("Metro") is a law enforcement agency with jurisdiction over the unincorporated parts of Clark County in which the events at issue took place.

10.    Defendant JOSEPH LOMBARDO ("SHERIFF LOMBARDO") is the Sheriff of Metro, and was the Sheriff of Metro at all relevant times herein. SHERIFF LOMBARDO and all Metro police officers are vested with the authority to enforce both Nevada statutory law and the Clark County Code. SHERIFF LOMBARDO has final policymaking authority for Metro internal policies and is vested with supervisory authority over all Metro officers.

11.    On information and belief, SHERIFF LOMBARDO is aware of, and has either explicitly or implicitly condoned or created a policy and practice of deliberate indifference toward the constitutional rights of persons engaging in free speech activities,

such as newsgathering, on public forum sidewalks.

12.     On information and belief, despite clearly-established law indicating that the sidewalks on public thoroughfares are public forums, SHERIFF LOMBARDO has failed to implement policies safeguarding citizens' First Amendment rights in these forums and has failed to adequately train his officers to protect citizens' First Amendment rights in these forums.

13.     On information and belief, SHERIFF LOMBARDO is aware of, and has either explicitly or implicitly condoned or created a policy and practice of encouraging, validating, and enforcing legally dubious claims by businesses in the Las Vegas Resort District and their employees that they may regulate First Amendment activity on the public forum sidewalks lining their properties.

14.     On information and belief, Defendant JOHN L. PELLETIER ("CAPT. PELLETIER") was a Metro Captain assigned to the Convention Center Area Command at all relevant times herein.

15.     On information and belief, CAPT. PELLETIER exercised supervisory authority over the Lieutenants, Sergeants, and Officers mentioned herein.

16.     On information and belief, Defendant RICHARD E. MAUPIN ("LT. MAUPIN") was a Metro Lieutenant assigned to the Convention Center Area Command at all relevant times herein.

17.     On information and belief, LT. MAUPIN exercised supervisory authority over the Sergeants, and Officers mentioned herein.

18.     On information and belief, Defendant RYAN J. FRYMAN ("SGT. FRYMAN") was a Metro Sergeant assigned to the Convention Center Area Command at all relevant times herein.

19.     On information and belief, SGT. FRYMAN exercised supervisory authority over the Officers mentioned herein.

20.     On information and belief, Defendants JUAN D. CONTRERAS, ALLEN J. PAVESE, and BRANDON M. MEADS were Metro Officers assigned to the Convention

1  Center Area Command at all relevant times herein. Collectively, CAPT. PELLETIER, LT.
2  MAUPIN, SGT. FRYMAN, OFFICER CONTRERAS, OFFICER PAVESE, and
3  OFFICER MEADS may be referred to as the "Officer Defendants."

4       21.   On information and belief, FASHION SHOW MALL, LLC is, and at all
5  relevant times herein was, a foreign limited liability company registered in Nevada, which
6  owns, operates, controls and maintains Fashion Show Mall, located at 3200 Las Vegas
7  Blvd. S, as well as Fashion Show Mall's common areas such as parking lots and sidewalks.

8       22.   Defendant ROE SECURITY COMPANY is an entity whose true identity
9  is unknown to Plaintiff and is therefore sued under a fictitious name. On information and
10  belief, ROE SECURITY COMPANY was at all relevant times responsible for managing,
11  controlling, maintaining, and operating certain security services for FASHION SHOW
12  MALL, LLC, including vetting and training the security guards under its employ.

13      23.   Defendants DOE SECURITY GUARDS I – III are individuals whose true
14  identities are unknown to Plaintiff and are therefore sued under fictitious names. On
15  information and belief, these individuals were employed by and acting on the behalf of
16  ROE SECURITY COMPANY and/or FASHION SHOW MALL, LLC.

17      24.   The naming of defendants herein is based upon information and belief.
18  MR. SOLOMON reserves his right to name additional defendants and modify his
19  allegations concerning defendants named herein.

20                          **IV.  STANDING**

21      25.   MR. SOLOMON was directly affected by Defendants' practices and
22  policies of violating his constitutional rights, as set forth more fully herein, and/or other
23  abuses by Defendants operating under color of law as alleged herein.

24      26.   An actual case and controversy exist between MR. SOLOMON and
25  Defendants concerning their respective rights, privileges, and obligations.

26                     **V.  FACTUAL ALLEGATIONS**

27  ***Fashion Show Drive***

28      27.   Fashion Show Drive is a street in unincorporated Clark County, Nevada

6

that runs east-to-west for approximately 2,100 feet between Las Vegas Boulevard and Sammy Davis Jr. Drive. It is located in the Las Vegas Resort District and is policed by Metro officers from the Convention Center Area Command.

28.     The Trump International Hotel is situated on the north side of Fashion Show Drive. To its east, also on the north side of Fashion Show Drive, is a vacant lot that was formerly the site of the New Frontier casino.

29.     Fashion Show Mall is located on, and spans the entirety of, the south side of Fashion Show Drive.

30.     The south side of Fashion Show Drive has an approximately 5-foot wide sidewalk running its entire length from Sammy Davis Jr. Drive to Las Vegas Boulevard, with eight points at which motor vehicles can make ingress and egress from Fashion Show Mall.

31.     By contrast, an approximately 800-foot portion—nearly 40%—of the sidewalk on the north side of Fashion Show mall is—and during the events at issue was—fenced-off and inaccessible to pedestrians.

32.     On information and belief, at the time of the events at issue, there was no street sign or any other indicia to give notice that Fashion Show Drive and its sidewalks were subject to a different legal status than the public sidewalks they connected.

33.     On information and belief, at some point after the events at issue, two small "Private Drive" street signs were installed in the area: one on the northeast corner of the intersection of Fashion Show Drive and Sammy Davis Jr. Drive, and the other on the southwest corner of the intersection of Fashion Show Drive and Las Vegas Boulevard.

34.     On information and belief, the south sidewalk of Fashion Show Drive is, and at all relevant times was, regularly used without restriction by the general public to travel on foot between Las Vegas Resort District casinos and popular local businesses located near the intersection of Fashion Show Drive and Sammy Davis Jr. Drive.

35.     As the south sidewalk of Fashion Show Drive is the only means by which a pedestrian can safely traverse from Las Vegas Boulevard to Sammy Davis Jr. Drive via

7

1   Fashion Show Drive, the south sidewalk performs an essential public function.

2   ***The History of Litigation Concerning the Las Vegas Resort District***

3   36.   For "[t]ime out of mind public streets and sidewalks have been used for

4   public assembly and debate, the hallmarks of a traditional public forum" *Frisby v. Schultz*,

5   487 U.S. 474, 480 (1988) (quotation omitted). They are the "archetype" of a traditional

6   public forum. *Id.* As the United State Court of Appeals for the Ninth Circuit has explained,

7   "[t]he protections afforded by the First Amendment are nowhere stronger than in streets

8   and parks, both categorized for First Amendment purposes as traditional public fora*."*

9   *Berger v. City of Seattle*, 569 F.3d 1029, 1035–36 (9th Cir. 2009) (citations omitted).

10   Public sidewalks are also a traditional public forum and are open to the public for

11   expressive activities. *United States v. Grace*, 461 U.S. 171, 179 (1983).

12   37.   According to clearly established case law, "a thoroughfare sidewalk,

13   seamlessly connected to public sidewalks at either end and intended for general public

14   use"—such as the south sidewalk of Fashion Show Drive—is "a public sidewalk, and

15   consequently, a traditional public forum from which [the sidewalk's private owners] have

16   no right to exclude members of the public." *Perez-Morciglio v. Las Vegas Metropolitan*

17   *Police Dept.*, 820 F. Supp. 2d 1100, 1111 (D. Nev. 2011) (citing *Venetian Casino Resort,*

18   *L.L.C. v. Local Joint Executive Board of Las Vegas*, 45 F. Supp. 2d 1027, 1036 (D. Nev.

19   1999)).

20   38.   The United States Court of Appeals for the Ninth Circuit has repeatedly

21   found that the sidewalks located within the Las Vegas Resort District are public fora.

22   39.   The Ninth Circuit issued its first decision pertaining to the public nature of

23   the sidewalks in the Las Vegas in 1998 in *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136

24   (9th Cir. 1998.) In that case, the Circuit held that a Clark County Ordinance which

25   prohibited canvassers from distributing leaflets on the sidewalks in the Las Vegas Resort

26   District was facially overbroad and thus unconstitutional on its face. *Id.* at 1140. In so

27   holding, the Circuit noted that there was "no dispute  that the Ordinance regulates activities

28   occurring in a public forum." *Id.* at 1144.

40.     Three years later, the Ninth Circuit issued another opinion finding that the streets and sidewalks in the Las Vegas Resort District are public fora. In that case, *Venetian Casino Resort, LLC v. Local Joint Executive Board of Las Vegas*, 257 F.3d 937 (9th Cir. 2001). In that case, the Circuit held that a replacement sidewalk constructed on private property to replace the old public sidewalk was a public forum subject to the protections of the First Amendment because the sidewalk was historically public, the relocation of the sidewalk onto private property did not fundamentally alter its character or use by the public, and the sidewalk was similar to and interconnected with Las Vegas' network of public sidewalks. *Id.* at 948.

41.     After the *Venetian* decision, the Ninth Circuit reiterated its holdings that the sidewalks in the Las Vegas Resort District are public fora. *Santopietro v. Howell*, 857 F.3d 980, 988 (9th Cir. 2017) ("The sidewalks along the Las Vegas Strip dedicated to public use are public fora.") (citing *Venetian*, 257 F.3d at 943).

42.     Because the south sidewalk of Fashion Show Drive was—and still is—a traditional public forum regardless of whether FASHION SHOW MALL, LLC retains title to the land on which the sidewalk exists, Defendants did not have a right to prevent MR. SOLOMON from performing his photojournalistic duties, much less cite, trespass, and arrest MR. SOLOMON as more fully described below.

### *Defendants' Policies and Practices Regarding Fashion Show Drive Sidewalks*

43.     On information and belief, FASHION SHOW MALL, LLC and ROE SECURITY COMPANY security personnel have a policy and practice of asserting that the south sidewalk of Fashion Show Drive is not a public forum and that FASHION SHOW MALL, LLC and ROE SECURITY COMPANY and their employees may eject individuals engaged in newsgathering and other protected First Amendment activities on its public forum sidewalks.

44.     On information and belief, Metro has a policy and practice of encouraging and assisting FASHION SHOW MALL, LLC in its false claims that the south sidewalk of Fashion Show Drive is not a public forum, and that it can eject individuals engaged in

1   engaged in newsgathering and other protected First Amendment activities on its public

2   forum sidewalks.

3        45.   On information and belief, Metro has a policy and practice of accepting

4   the assertions of FASHION SHOW MALL, LLC and ROE SECURITY COMPANY

5   security personnel with respect to alleged trespassers, without making independent

6   determinations as to whether a crime has been committed.

7        46.   On information and belief, SHERIFF LOMBARDO has failed to instruct

8   or implement policies designed to protect against constitutional violations by officers under

9   his command, such as those committed by the Defendant Officers in this case. Defendants

10   CAPT. PELLETIER, LT. MAUPIN, and SGT. FRYMAN also failed to appropriately

11   supervise and train their subordinates.

12   ***The April 15, 2017 Protest***

13        47.   On April 15, 2017, protestors held a rally on the north sidewalk of Fashion

14   Show Drive, directly outside the Trump International Hotel, to demand that President

15   Trump release his tax returns.

16        48.   MR. SOLOMON was assigned to shoot video of this newsworthy event by

17   his employer, KLAS-TV.

18        49.   MR. SOLOMON was wearing a white polo shirt bearing the KLAS-TV "8

19   News Now" logo.

20        50.   Upon arriving at the scene in the early afternoon, MR. SOLOMON

21   realized that he could not get good footage of the protest from the north side of Fashion

22   Show Drive, so he crossed the street to the south side of Fashion Show Drive and began to

23   set up his camera on the south sidewalk, directly across from the Trump International

24   Hotel.

25        51.   While he was preparing his equipment to record the protest, MR.

26   SOLOMON was confronted by Defendants DOE SECURITY GUARDS I – III, three

27   Fashion Show Mall security guards, who told him that the sidewalk was private property

28   and demanded that he leave.

52.     MR. SOLOMON politely disagreed with Defendants DOE SECURITY GUARDS I – III and asserted his constitutional right to record video of the protest from the sidewalk, which he knew to be a public forum.

53.     MR. SOLOMON also noted to Defendants DOE SECURITY GUARDS I - III that several other members of the public were using their cell phones and other video equipment to record the protest from the south sidewalk without being harassed like he was.

54.     To settle this argument, MR. SOLOMON got the attention of Defendant SGT. FRYMAN, who was standing nearby.

55.     Contrary to law that has been established for at least a decade—that private property owners cannot exclude members of the public from thoroughfare sidewalks intended for general public use—SGT. FRYMAN stated that the sidewalk was private property and that MR. SOLOMON had to leave.

56.     Following SGT. FRYMAN's instructions, MR. SOLOMON began to walk east on Fashion Show Drive to find a different location from which he could film the protest.

57.     MR. SOLOMON remained steadfast in his belief that the south sidewalk of Fashion Show Drive was a public forum from which he was legally permitted to film the protest.

58.     SGT. FRYMAN then grabbed MR. SOLOMON's arm and asked MR. SOLOMON to accompany him to his patrol car. MR. SOLOMON demanded that SGT. FRYMAN not touch him and initially refused to accompany SGT. FRYMAN to his patrol car.

59.     At this point, three more Metro officers surrounded MR. SOLOMON. On information and belief those officers were Defendant Officers JUAN D. CONTRERAS, ALLEN J. PAVESE, and BRANDOM M. MEADS.

60.     As MR. SOLOMON was attempting to secure his camera to its tripod, SGT. FRYMAN again grabbed MR. SOLOMON's arm and, along with Defendant

11

OFFICERS CONTRERAS, PAVESE, and MEADS, placed MR. SOLOMON in handcuffs.

61.     The Defendant Officers walked MR. SOLOMON to SGT. FRYMAN's patrol car, parked in an adjacent Fashion Show Mall parking lot. There, the Defendant Officers repeatedly misstated the law to MR. SOLOMON, essentially asserting that Fashion Show Mall had absolute authority over who may stand on the sidewalks on the south side of Fashion Show Drive.

62.     These assertions included blatant misrepresentations of the law regarding public forums, such as:

- "No matter what you think, that is private property. It's the same thing as if somebody goes into your house, they ask you to leave, and you don't leave."

- "If they don't want you to walk through it, they don't have to. That is the law."

- "They don't have to allow anybody through there."

63.     At the patrol car, and without any reasonable suspicion or probable cause, the Defendant Officers patted down MR. SOLOMON and searched his clothing.

64.     LT. MAUPIN arrived at the scene and, like his subordinates, misstated the law to MR. SOLOMON. LT. MAUPIN told MR. SOLOMON that the sidewalks were private property, and that the owners did not need to provide notice of this to pedestrians.

65.     After initially refusing, MR. SOLOMON provided his name and birthdate to the Defendant Officers.

66.     CAPT. PELLETIER arrived at the scene. Instead of correcting his subordinates' mistakes and releasing MR. SOLOMON, he asked MR. SOLOMON who his boss at Channel 8 was, and what that person's phone number was.

67.     On information and belief, CAPT. PELLETIER called the KLAS-TV assignment desk and confirmed MR. SOLOMON's identity. Despite this confirmation, CAPT. PELLETIER took no further action to free MR. SOLOMON or cease his officers' assault on MR. SOLOMON's constitutional rights.

12

68.     SGT. FRYMAN informed MR. SOLOMON that there would be a paper to sign.

69.     MR. SOLOMON replied that he would not sign any such paper, because he did not know what it was or if it would incriminate him.

70.     SGT. FRYMAN replied that MR. SOLOMON would be going to jail, and that he would have to wait in the police van while officers filled out paperwork.

71.     On SGT. FRYMAN's command, Defendant Officers replaced MR. SOLOMON's handcuffs with a wrist shackles attached to his waist and torso, then locked him in the back of a waiting police van.

72.     Later, Defendant Officers opened the police van door and Defendant DOE SECURITY GUARDS I – III presented MR. SOLOMON with a Notice to Depart and Forbid Entry (the "Trespass Notice") (attached as Exhibit A) which purported to forbid MR. SOLOMON entry to "private property" consisting of Fashion Show Mall, its parking lots, and surrounding areas until November 15, 2018.

73.     MR. SOLOMON asked DOE SECURITY GUARDS I – III whether the Trespass Notice mentioned anything about the sidewalk.

74.     One of the DOE SECURITY GUARDS responded that the Trespass Notice "did not have to [mention the sidewalk]" and pointed MR. SOLOMON's attention to the "Map of Property Boundaries" (attached as Exhibit B) on the back of the Trespass Notice.

75.     The Map of Property Boundaries features a boundary line which extends over the entirety of Fashion Show Drive, including the north side of the road which Defendant Officers claimed belonged to the Trump International Hotel. (*See* Exhibit B.) According to the Trespass Notice, MR. SOLOMON would potentially have been subject to arrest and prosecution if he so much as drove on Fashion Show Drive.

### *The Aftermath*

76.     After several hours, the protest ended and the Defendant Officers drove MR. SOLOMON to Clark County Detention Center ("CCDC"), where he was booked on

charges of trespassing and obstruction of a police officer.

77.    As MR. SOLOMON was being processed, Defendant OFFICER CONTRERAS told CCDC employees to "take their time" with MR. SOLOMON.

78.    MR. SOLOMON was thereafter subjected to the animus of CCDC employees, who forced him to sit in unwashed blood stains and refused MR. SOLOMON access to the telephone for approximately several hours.

79.    Approximately four hours later, MR. SOLOMON was released from CCDC custody.

80.    Subsequently, the Clark County District Attorney's Office declined to pursue criminal charges against MR. SOLOMON.

81.    Upon information and belief, the April 15, 2017 arrest was a contributing factor to MR. SOLOMON's subsequent termination from KLAS-TV.

82.    Upon information and belief, as a consequence of the April 15, 2017 arrest, MR. SOLOMON has been deprived of freelance photojournalist opportunities due both to the negative publicity surrounding the arrest and the fact that MR. SOLOMON would potentially be subject to arrest if he were to set foot on Fashion Show Drive before November 15, 2018.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES PURSUANT TO 42 U.S.C. § 1983 (RIGHTS TO FREE SPEECH AND FREEDOM OF THE PRESS) (AGAINST ALL DEFENDANTS)

83.    MR. SOLOMON repeats and re-alleges Paragraphs 1 through 82 as though fully set forth herein.

84.    Defendants acted under color of law, and their actions violated MR. SOLOMON's rights to freedom of speech and freedom of the press as guaranteed by the First Amendment of the U.S. Constitution and applicable to the states through the Fourteenth Amendment of the U.S. Constitution.

85.     Defendants falsely and repeatedly asserted that the sidewalk on the south side of Fashion Show Drive is not a public forum and treated MR. SOLOMON as if he were a trespasser on private property, even though the sidewalk is a public forum.

86.     Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to officer interactions with private security personnel.

87.     Defendant FASHION SHOW MALL, LLC is liable because at all relevant times it was responsible for making and enforcing policies regarding regulating First Amendment activities in a public forum, and coordinating with Metro to enforce those policies.

88.     As a direct and proximate cause of Defendants' violations of the First Amendment, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof. MR. SOLOMON is also entitled to injunctive and declaratory relief, attorney's fees and costs, and punitive damages.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**TO THE CONSTITUTION OF THE UNITED STATES**
**PURSUANT TO 42 U.S.C. § 1983**
**(RIGHTS TO FREE SPEECH AND FREEDOM OF THE PRESS)**
**(AGAINST DEFENDANTS METRO AND SHERIFF LOMBARDO IN HIS OFFICIAL CAPACITY)**

89.     MR. SOLOMON repeats and re-alleges Paragraphs 1 through 88 as though fully set forth herein.

90.     Defendants acted under color of law, and their actions violated MR. SOLOMON's rights to freedom of speech and freedom of the press as guaranteed by the First Amendment of the U.S. Constitution and applicable to the states through the Fourteenth Amendment of the U.S. Constitution.

91.     Defendants falsely and repeatedly asserted that the sidewalk on the south side of Fashion Show Drive is not a public forum and treated MR. SOLOMON as if he were a trespasser on private property, even though the sidewalk is a public forum.

15

92.     Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to officer interactions with private security personnel.

93.     As a direct and proximate cause of Defendants and SHERIFF LOMBARDO's violations of the First Amendment, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof. MR. SOLOMON is also entitled to injunctive and declaratory relief, attorney's fees and costs, and punitive damages.

### THIRD CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RIGHTS TO BE FREE FROM UNLAWFUL SEARCHES AND SEIZURES)
(AGAINST OFFICER DEFENDANTS, METRO, AND SHERIFF LOMBARDO)

94.     MR. SOLOMON repeats and re-alleges Paragraphs 1 through 93 as though fully set forth herein.

95.     Defendants acted under color of law, and violated MR. SOLOMON's rights to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution. OFFICER DEFENDANTS searched the person and possessions of MR. SOLOMON by frisking, patting down, and seizing MR. SOLOMON without reasonable suspicion that he committed a crime.

96.     Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to requests for assistance by private security personnel and ensuring that officers only aid or affirm actions of private security personnel when they act legally, and Defendants Metro and SHERIFF LOMBARDO failed to make and enforce such policies. Moreover, Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to the OFFICER DEFENDANTS' execution of frisks and searches and ensuring that such searches are

conducted within the parameters of the law, and Defendants Metro and SHERIFF LOMBARDO failed to do so.

97.     As a direct and proximate result of Defendants' violations of the Fourth and Fourteenth Amendments, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory relief against Defendant Metro, SHERIFF LOMBARDO, and the OFFICER DEFENDANTS, as well as compensatory and punitive damages from Defendants.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**TO THE CONSTITUTION OF THE UNITED STATES**
**PURSUANT TO 42 U.S.C. § 1983**
**(SUBSTANTIVE DUE PROCESS)**
**(AGAINST ALL DEFENDANTS)**

98.     MR. SOLOMON repeats and re-alleges Paragraphs 1 through 97 as though fully set forth herein.

99.     Defendants acted under color of law and violated MR. SOLOMON's substantive due process rights to liberty and free movement as guaranteed by the Fourteenth Amendment of the U.S. Constitution. Defendants ROE SECURITY GUARDS I – III's successful attempt to eject MR. SOLOMON from the public forum sidewalk on Fashion Show Drive with the assistance and approval of Defendants Metro and the OFFICER DEFENDANTS, and Metro's continued detention of MR. SOLOMON, violated his rights to liberty and freedom of movement and locomotion.

100.     Defendants' actions were in violation and flagrant disregard of established law as set out in Nevada District Court and Ninth Circuit Appellate Court decisions, in which those courts clearly held that sidewalks such as south sidewalk of Fashion Show Drive are public forums.

101.     Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to

requests for assistance by FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security guards, and ensuring that officers only aid or affirm actions of such private security personnel when they act legally. Furthermore, Defendants Metro and SHERIFF LOMBARDO at all relevant times were responsible for making and enforcing policies ensuring that OFFICER DEFENDANTS do not violate the substantive due process rights of individuals. Defendants Metro and SHERIFF LOMBARDO failed to make and enforce such policies.

102.   Defendants FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY are liable because at all relevant times they were responsible for making and enforcing policies with respect to the actions of FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security guards and personnel and for making them aware of the actual boundaries of their authority and the legal status of the south sidewalk of Fashion Show Drive, as well as their authority to deprive individuals of their liberty and freedom of movement in that public forum, and Defendants FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY failed to do so.

103.   As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory relief against Defendant Metro and Defendants FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE FOURTEENTH AMENDMENT
### TO THE CONSTITUTION OF THE UNITED STATES
### PURSUANT TO 42 U.S.C. § 1983
### (RIGHTS TO EQUAL PROTECTION OF THE LAW)
### (AGAINST DOE SECURITY GUARDS I – III AND OFFICER DEFENDANTS)

104.   MR. SOLOMON repeats and re-alleges Paragraphs 1 through 103 as though fully set forth herein.

105.   Defendants DOE SECURITY GUARDS I – III and OFFICER DEFENDANTS acted under color of law, and violated MR. SOLOMON's right to equal protection of the law.

106.   Specifically, despite throngs of onlookers using cellular phones and other video equipment to film the April 15, 2017 protest from the south sidewalk of Fashion Show Drive, only MR. SOLOMON was subjected to ejection, detention, citation and arrest by DOE SECURITY GUARDS I – III and the OFFICER DEFENDANTS.

107.   On information and belief, the decision to eject, detain, cite and arrest MR. SOLOMON was racially-motivated, as dozens of non-African American individuals were allowed to film the April 15, 2017 protest from the south sidewalk of Fashion Show Drive unmolested by DOE SECURITY GUARDS I – III or the OFFICER DEFENDANTS.

108.   As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory relief against DOE SECURITY GUARDS I – III and OFFICER DEFENDANTS; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

### SIXTH CAUSE OF ACTION
#### VIOLATION OF THE FOURTEENTH AMENDMENT
#### TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (PROCEDURAL DUE PROCESS)
#### (AGAINST DEFENDANTS METRO, SHERIFF LOMBARDO, AND THE OFFICER DEFENDANTS)

109.    MR. SOLOMON repeats and re-alleges Paragraphs 1 through 108 as though fully set forth herein.

110.    Defendants Metro, SHERIFF LOMBARDO, and OFFICER DEFENDANTS acted under color of law, and violated MR. SOLOMON's rights to be free from deprivation of their rights under the U.S. Constitution without due process of law. OFFICER DEFENDANTS impinged on MR. SOLOMON's interests in moving freely on public forum sidewalks without the threat of criminal trespass citations by issuing misdemeanor citation warnings for use of public forum sidewalks and improperly enforcing FASHION SHOW MALL, LLC's (and its employees') erroneous assertions to evict people from public forum sidewalks, and in doing so Defendants Metro, SHERIFF LOMBARDO, and OFFICER DEFENDANTS deprived MR. SOLOMON of his procedural due process rights ensured by the Fourteenth Amendment to the U.S. Constitution.

111.    Defendant Metro's policy and practice of enforcing false claims of trespass by FASHION SHOW MALL, LLC against individuals, such as MR. SOLOMON, risks, and does cause, wrongful deprivation of individuals' liberty interests in using the public forum sidewalks on Fashion Show Drive.

112.    Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies with respect to requests for assistance by casino security personnel and ensuring that officers only aid or affirm actions of FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security personnel when they act legally, and Defendants Metro and SHERIFF LOMBARDO failed to make and enforce such policies. Further, Defendants Metro and SHERIFF LOMBARDO are liable because at all relevant times they were responsible for making and enforcing policies ensuring that OFFICER DEFENDANTS do not issue

20

misdemeanor citations where they have no legal basis for doing so.

113.   As a direct and proximate result of Defendants Metro, SHERIFF LOMBARDO, and OFFICER DEFENDANTS' violations of the Fourteenth Amendment, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory relief against Defendant Metro; attorney's fees and costs from all defendants, and monetary, compensatory, and punitive damages from all defendants.

### SEVENTH CAUSE OF ACTION
#### CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS
#### PURSUANT TO 42 U.S.C. § 1983
#### (AGAINST ALL DEFENDANTS)

114.   MR. SOLOMON repeats and re-alleges Paragraphs 1 through 113 as though fully set forth herein.

115.   Defendants acted under color of law, and Defendants engaged in a civil conspiracy to violate MR. SOLOMON's constitutional rights to freedom of speech, freedom of the press, freedom of movement, and the rights to be free from unlawful arrest and unreasonable search and seizure, as well as to violate MR. SOLOMON's due process rights.

116.   On information and belief, Defendant Metro routinely responds to calls from private security forces employed by Defendant FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY, and routinely fails to make an independent determination of probable cause to arrest. Upon information and belief, Defendants Metro, FASHION SHOW MALL, LLC and ROE SECURITY COMPANY have an understanding and meeting of the minds that the FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security personnel may regulate First Amendment on the south sidewalk of Fashion Show Drive—a traditional public forum—and unlawfully expel individuals from said sidewalk, and that Metro will respond by unlawfully arresting or citing those individuals detained by FASHION SHOW MALL, LLC and/or ROE

1    SECURITY COMPANY security officers, without making an independent determination

2    of reasonable suspicion or probable cause, which deprives individuals of their

3    constitutional rights.

4         117.   Defendants Metro and SHERIFF LOMBARDO are liable because they

5    have instituted policies, practices, or customs that permit FASHION SHOW MALL, LLC

6    and/or ROE SECURITY COMPANY and their employees to unlawfully expel individuals

7    engaged in protected First Amendment activity on public forum sidewalks, and that further

8    permit its officers to respond with arrest or citation pursuant to such detention.

9    Furthermore, Defendants Metro and SHERIFF LOMBARDO at all relevant times were

10   responsible for making and enforcing policies ensuring that Officer Defendants make an

11   independent determination of probable cause prior to arrest or citation. However, upon

12   information and belief, Defendants engaged in an understanding that such independent

13   determination was not required pursuant to the mere assertions of FASHION SHOW

14   MALL, LLC and/or ROE SECURITY COMPANY security officers that the south

15   sidewalk of Fashion Show Drive was not a public forum, which deprive individuals of their

16   constitutional rights.

17        118.   Defendants FASHION SHOW MALL, LLC and/or ROE SECURITY

18   COMPANY are liable because, contrary to federal court decisions by which they are

19   bound, they have instituted practices, policies or procedures that require or permit their

20   security personnel to unlawfully expel individuals engaged in protected First Amendment

21   activity on public forum sidewalks. Defendants FASHION SHOW MALL, LLC and/or

22   ROE SECURITY COMPANY, upon information and belief, have engaged in an

23   understanding or meeting of the minds with Defendants Metro that the Defendants

24   FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security personnel

25   may regulate protected First Amendment activity on the south sidewalk of Fashion Show

26   Drive contrary to law, and otherwise unlawfully expel individuals from the south sidewalk

27   of Fashion Show Drive, and that Metro will respond by arresting or citing those individuals

28   ejected the FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY security

guards, without making an independent determination of probable cause, which deprive individuals of their constitutional rights.

119.    As a direct and proximate result of Defendants' civil conspiracy to violate MR. SOLOMON's civil rights, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory relief against Defendant Metro and Defendants FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY, as well as their employees and agents; attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

### EIGHTH CAUSE OF ACTION
#### EXCESSIVE AND UNREASONABLE USE OF FORCE
#### PURSUANT TO 42 U.S.C. § 1983
#### (AGAINST OFFICER DEFENDANTS)

120.    MR. SOLOMON repeats and re-alleges Paragraphs 1 through 119 as though fully set forth herein.

121.    The OFFICER DEFENDANTS, acting under the color of state law in their individual capacities, detained MR. SOLOMON without reasonable suspicion and arrested MR. SOLOMON without probable cause. This deprived MR. SOLOMON of the right to be free from the use of unlawful and/or unreasonable force, since any forced used to effect and maintain an unlawful arrest is an unlawful violation of the Fourth and Fourteenth Amendments

122.    The OFFICER DEFENDANTS' failure to intervene, prevent or stop the constitutional violations on the part of other individually named OFFICER DEFENDANTS, who were in a position to do so when such violations occurred, renders such Defendants liable for these violations.

123.    As a direct and proximate result of Defendants' use of excessive force, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and MR. SOLOMON is entitled to: injunctive and declaratory

relief against the OFFICER DEFENDANTS, as well as attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

### NINTH CAUSE OF ACTION
#### NEGLIGENT TRAINING, SUPERVISION AND RETENTION
#### UNDER NEV. REV. STAT. § 41.130
#### (AGAINST DEFENDANTS FASHION SHOW MALL, LLC AND ROE SECURITY COMPANY)

124.    MR. SOLOMON repeats and re-alleges Paragraphs 1 through 123 as though fully set forth herein.

125.    Defendants FASHION SHOW MALL, LLC and ROE SECURITY COMPANY owe MR. SOLOMON a duty to use reasonable care in the training, supervision, and retention of their employees to ensure that the employees are fit for their positions by implementing policies and procedures designed to prevent wrongful acts by their employees, such as those committed by Defendants DOE SECURITY GUARDS I – III.

126.    Defendants FASHION SHOW MALL, LLC and ROE SECURITY COMPANY breached this duty by failing to train their employees that the south sidewalk of Fashion Show Drive is a public forum open to the general public, and that they could not lawfully eject individuals engaged in protected newsgathering activities on that sidewalk.

127.    Defendants FASHION SHOW MALL, LLC and ROE SECURITY COMPANY's breach of this duty caused MR. SOLOMON to suffer physical injury, emotional distress, and economic damages subject to proof at trial.

128.    Defendants FASHION SHOW MALL, LLC and ROE SECURITY COMPANY are liable because Defendants DOE SECURITY GUARDS I – III were at all relevant times in the employ of FASHION SHOW MALL, LLC and/or ROE SECURITY COMPANY. Defendants DOE SECURITY GUARDS I – III were not acting independently, committed wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable considering the nature and scope of their employment as security personnel where FASHION SHOW MALL, LLC

maintained a policy that public forum sidewalks were "private property."

129.   As a direct and proximate result of Defendants FASHION SHOW MALL, LLC and ROE SECURITY COMPANY's negligent training, supervision and retention of Defendants DOE SECURITY GUARDS I – III, MR. SOLOMON has suffered, is suffering, and will continue to suffer damages in an amount subject to proof.

## VII.  PRAYER FOR RELIEF

WHEREFORE, MR. SOLOMON respectfully prays as follows:

a.   A declaration that Defendant FASHION SHOW MALL, LLC's policies and practices of harassing, ejecting and banning individuals engaged in lawful activities on public forum sidewalks is unlawful and that the harassment, arrest, detainment, search and other unlawful treatment of MR. SOLOMON based upon his protected newsgathering activities on public forum sidewalks violated his constitutional rights;

b.   A declaration that Defendant METRO's, Defendant SHERIFF LOMBARDO's, Defendant CAPT. PELLETIER's, and Defendant LT. MAUPIN's failures to make or enforce policies and practices with respect to preventing the wrongful citation, detention, and arrest of persons engaged in protected newsgathering activities on public forum sidewalks violated MR. SOLOMON's constitutional rights;

c.   A permanent injunction enjoining Defendants and their employees and agents from violating the constitutional rights of individuals based on the false assertion that Defendants may regulate, eject, arrest, cite, or otherwise interfere with individuals engaged in lawful, protected newsgathering activity on public forum sidewalks, regardless of whether such sidewalks are "private property;"

d.   A permanent injunction enjoining Defendant Metro and its officers from further engaging in policies and practices of citing, detaining, and arresting persons engaged in protected newsgathering activities based on the erroneous assertions of private security personnel that public forum sidewalks are "private property;"

e.   Compensatory and punitive damages to be determined at trial;

f.   An award of attorney's fees and expenses under 42 U.S.C. § 1988(b);

g.      For a trial on all issues; and,

h.      Any further relief the Court deems appropriate.


RESPECTFULLY SUBMITTED this 15th day of April, 2019.


/s/ Margaret A. McLetchie
MARGARET A. MCLETCHIE
Nevada Bar No. 10931
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Attorney for Plaintiff Nebyou Solomon*