UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Nebyou Solomon, | Case No. 2:19-cv-00652-CDS-DJA |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Closing Case** |
| v. | [ECF No. 118] |
| Las Vegas Metropolitan Police Department, et al., | |
| Defendants | |

Plaintiff Nebyou Solomon brings this civil-rights action under 42 U.S.C. § 1983 against the Las Vegas Metropolitan Police Department (LVMPD), and individuals Captain John Pelletier, Lieutenant Richard Maupin, Sergeant Ryan Fryman, and Officer Juan Contreras (collectively, officer defendants).[1] Defendants move for summary judgment on each claim against them. For the reasons herein, I grant summary judgment in favor all of defendants on all claims. Because I grant summary judgment on all claims, I kindly instruct the Clerk of Court to close this case.

I.     **Background**

A.  **Solomon's arrest**

On April 15, 2017, Solomon, a professional photojournalist, was assigned by his employer KLAS-TV to film a protest on the sidewalk of Fashion Show Drive outside of the Trump International Hotel. Third Am. Compl. (TAC), ECF No. 57 at ¶¶63–64. As Solomon set up his video equipment on the sidewalk, Fashion Show Mall security guards insisted that the sidewalk was private property, told Solomon that he could not film from his location, and demanded that he leave. *Id.* at ¶¶67–69. Solomon, believing that the First Amendment protected his right to film

---

[1] Solomon concedes his claims against individual defendants Sheriff Lombardo, Officer Meads, and Officer Pavese. ECF No. 128 at 3 n.3.

in public forums such as sidewalks, waved over Sergeant Fryman for assistance in vindicating that right. *Id.* at ¶¶68–70; ECF No. at 67.[2] Sergeant Fryman stated that the sidewalk was indeed the private property of Fashon Show Mall, and it was not allowing protestors on the sidewalk, and directed Solomon to leave. ECF No. 57 at ¶¶70–71; Fryman Body-Worn Camera (BCW), Defs.' Ex. B, ECF No. 118 (manually filed) at 00:35–01:00. Solomon disagreed with the characterization, and after a short discussion, Sergeant Fryman asked Solomon to follow him to his vehicle so he could further explain. *Id.* at 01:24–01:27. Solomon continued to disagree with Sergeant Fryman, stating that the sidewalk was public property. *Id.* at 01:23–01:34. Solomon stated that he would set up his camera further down the sidewalk, picked up his camera, and moved east along the Fashion Show Mall sidewalk. *Id.* at 01:34–01:44. Sergeant Fryman advised Solomon that the area from which he intended to film was still private property. *Id.* at 01:34–01:47.

The verbal disagreement over sidewalk characterization between Solomon and Sergeant Fryman continued as Solomon moved along the Fashion Show Mall sidewalk to the area of the sidewalk he intended to film from. *Id.* at 01:48–01:52. Sergeant Fryman asked Solomon to stop walking away from him; Solomon refused and told Sergeant Fryman that he could not tell him what was private. *Id.* at 01:52–01:58. Sergeant Fryman again asked Solomon to stop walking away so he could further explain, but Solomon refused and continued down the Fashion Show Mall sidewalk. *Id.* at 01:58–02:00.

Solomon and Sergeant Fryman's disagreement continued as Sergeant Fryman followed Solomon and placed his hand on Solomon's left arm, to which Solomon responded by telling Sergeant Fryman not to touch him and continued to walk away from Sergeant Fryman. *Id.* at

---

[2] Narrative of Nebyou Solomon, Pl.'s Ex. 4, ECF No. 128-4 at 66–67 ("A few minutes later, three Fashion Show Mall security officers approached and told me I need to leave the sidewalk because I was on private property. I replied I believe this is a public sidewalk and I have a right to be here. . . I suggested getting an officer and tried to get the attention of Sergeant Fryman by calmly waving to him and signaling for him to come over. As soon as he walked over, I told him about the conversation . . . I said they're telling me this is a private sidewalk and I need to move[,]could you tell them this is public and I have a right to be here. He then cut me off and said no, this is private [property] and you have to move.").

02:00–02:05. Sergent Fryman grabbed Solomon's arm; Solomon asked Sergeant Fryman why he was grabbing his arm, to which Fryman responded, "because you are yelling at me right now." *Id.* at 02:05–02:09. As soon as Sergeant Fryman let go of Solomon, per Solomon's request, Solomon picked up his filming equipment and again walked away. *Id.* at 02:09–02:19. Sergeant Fryman grabbed Solomon again and directed him to put his camera down. *Id.* at 02:20–02:28. Solomon put his camera down and was handcuffed by Officer Contreras. *Id.* at 02:28–03:00. Sergeant Fryman escorted Solomon to an LVMPD patrol vehicle. *Id.* at 03:00–03:26. Sergeant Fryman asked Solomon to walk towards the vehicle, and Solomon respond "no, I don't want to." *Id.* at 03:26–03:29. At the vehicle, Officer Pavese informed Solomon that he was being detained for trespassing and Fashion Show Mall could have him arrested if they desired. Contreras BWC, Defs.' Ex. C, ECF No. 118 (manually filed) at 04:04–04:13. Solomon indicated that he wanted to be arrested and refused to provide the officers with his name, even after being warned that failure to do so was a crime. *Id.* at 04:13–05:14. Solomon was presented with the opportunity to either sign a citation—without admitting guilt—or be detained and go to jail. Solomon refused to sign the citation. Fryman BWC, Defs.' Ex. F, ECF No. 118 (manually filed) at 00:51–01:10. After the protest ended, Solmon was transported to Clark County Detention Center where he was booked for trespassing and obstruction of a police officer. TAC, ECF No. 57 at ¶92. The Clark County District Attorney's office declined to pursue charges against Solomon. *Id.* at ¶96.

### B. Procedural history[3]

In April 2019, Solomon filed a complaint suing the LVMPD, the individual officers involved in his arrest, the Fashion Show Mall, and Universal Protection for allegedly violating his civil rights when he was arrested while filming a protest from the Fashion Show Mall sidewalk.[4] ECF No. 1. In his Third Amended Complaint, Solomon asserted nine causes of action

---

[3] This case was administratively reassigned to me in April of 2022. ECF No. 134.

[4] The Fashion Show Mall and Universal Protection Service (the company that provided the contract security guards at the mall) have settled with Solomon, and all claims against Fashion Show Mall and Universal Protection Service, and Fashion Show Mall security guards Andrew Antonio and Edwardo Aguilar were dismissed by Judge Dorsey with prejudice. ECF No. 98; ECF No. 100.

against defendants, three of which were which were conceded,[5] and one of which was dismissed,[6] leaving five causes of action.[7] TAC, ECF No. 57.

In October 2021, the LVMPD and officer defendants moved for summary judgment, contending that (1) Solomon failed to demonstrate a constitutional violation; (2) the officers are entitled to qualified immunity; and (3) Solomon failed to establish a legitimate *Monell* claim against the LVMPD. The motion is fully briefed. ECF No. 118; ECF No. 128; ECF No. 133. I set a hearing on the summary judgment motion in March of 2023. ECF No. 135. The parties requested to move the hearing several times pending settlement negotiations, but the case was not resolved. I thereafter granted in part and denied in part the parties' sixth motion to continue the summary judgment motion hearing. ECF No. 151. A hearing on the motion was held on September 29, 2023. ECF No. 155.

## II.    Legal standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue,

---

[5] Solomon concedes his claims for violations of substantive due process (count four), procedural due process (count six), and civil conspiracy (count seven). ECF No. 128 at 3 n.3.

[6] Solomon's claim of negligent training, supervision, and retention against Fashion Show Mall and Universal Protection Service (count nine), were dismissed pursuant to stipulation. ECF No. 100.

[7] Solomon's operative causes of action against defendants include (1) First Amendment violations against all officer defendants (count one); (2) First Amendment violations against LVMPD (count two); (3) Fourth Amendment violations against all officer defendants and LVMPD (count three); (4) Fourteenth Amendment violation (Equal Protection) against all officer defendants (count five); and (5) Excessive Force against officer defendants (count eight). TAC, ECF No. 57.

however, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party satisfies the requirements of Federal Rule of Civil Procedure 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. At the summary-judgment stage, "a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." *Assurance Co. of Am. v. Ironshore Specialty Ins. Co.*, 2015 WL 4579983, at *3 (D. Nev. July 29, 2015) (citing *Anderson*, 477 U.S. at 249). In evaluating a summary-judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

III.   **Discussion**

I first address claims against the officer defendants, then claims against LVMPD. Because I find that there was no constitutional violation, the officer defendants are granted summary judgment on all claims.

As a preliminary matter, defendants claim that Solomon failed to offer legal or factual arguments against Captain Pelletier, Lieutenant Maupin, and Officer Contreras. ECF No. 113 at 3, 6, 7, 8. Upon review of the evidence before the court, I find that there exist no material facts to support a cause of action against Captain Pelletier and Lieutenant Maupin. Although Solomon's complaint asserts that they were involved in violating his constitutional rights because they led

a briefing informing the LVMPD officers that Fashion Show Drive was private property and because they failed to appropriately supervise and train their subordinates, Solomon failed link these allegations to any cause of action.[8] TAC, ECF No. 57 at ¶¶59, 93. Accordingly, Captain Pelletier and Lieutenant Maupin are entitled to summary judgment on all claims against them. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (explaining that uncorroborated allegations do not create a genuine issue of material fact.); *see also Villegas v. Villa Plaza P'ship, L.P.*, 2020 U.S. Dist. LEXIS 3222 (C.D. Cal. Jan. 6, 2020) (citing *Celotex Corp.*, 477 U.S. at 322) ("The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.").

As the Ninth Circuit has instructed, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980)). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Id.* Finding no personal involvement by Pelletier or Maupin, I grant summary judgment in their favor and turn to assessing Solomon's claims against Sergeant Fryman and Officer Contreras.

A. **The officer defendants did not violate Solomon's First Amendment right to free speech and press (count one).**

The First Amendment prohibits government actors from "abridging the freedom of speech." U.S. Const. amend. I. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). In fact, the freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state. *Id.* at 462–63. But the First Amendment "does not guarantee the right to

---

[8] Solomon did not assert his claim of negligent training, supervision, and retention against Captain Pelletier or Lieutenant Maupin. *See* TAC, ECF No. 57 at 27.

communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (citations omitted). Rather, government actors violate one's free speech rights when it restricts constitutionally protected speech absent sufficient justification. *Frisby v. Schultz*, 487 U.S. 474, 479–81 (1988). To determine whether government actors infringed an individual's First Amendment rights, the court must consider whether the speech is protected, the nature of the relevant forum, and whether the justification for the exclusion satisfies the requisite standard for the forum. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

Solomon asserts that the nature of the speech at issue here is his "right to film an event of public significance," his "right to disagree with the police," his right to "express his disbelief that he could not film from a sidewalk open to public traversal," and "efforts to make inquiries to police officers about their tactics and treatment of him." ECF No. 128 at 15. I do not disagree with Solomon's summary of his rights. *See, i.e., Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest.") and *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) (discussing well established right of citizens to verbally challenge the police.). But, upon review of the record, and viewing the facts in the light most favorable to Solomon, I find that there is no genuine issue of material fact that the officer defendants did not restrict Solomon's right to film an event of public significance, as he was free to film from other locations, just not from a specific segment of the Fashion Show Mall sidewalk. Fryman BWC, Defs.' Ex. E, ECF No. 118 (manually filed) at 01:35–01:40. The evidence does not show that Solomon was detained for disagreeing with the officers about the character of the sidewalk or his alleged right to film therefrom. *See* Fryman BWC, Defs.' Ex. B, ECF No. 118 (manually filed) at 00:32–01:40. Rather, the evidence indicates that the speech in question is Solomon's insistence to remain on Fashion Show Mall's sidewalk against Sergent Fryman's directive to move to another location where he could then film the on-going protest. *See generally id.*

At the hearing held on September 29, 2023, as a matter of first impression in this district, I determined that the nature of the Fashion Show Mall sidewalk, based on its location directly across the street from the Trump Hotel in Las Vegas, was a public forum subject to protections of the First Amendment. But law enforcement could not have known that this court would make that determination 6 years later. Assuming they could or should have predicted my ruling, "even in a public forum[,] [however,] the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)); *see also Jacobson v. United States Dep't of Homeland Sec.*, 882 F.3d 878, 882 (9th Cir. 2018). It is the government's burden to justify restrictions after a plaintiff demonstrates it impinges on First Amendment interests. *Clark*, 468 U.S. at 293 n.5. As discussed in more detail herein, the evidence before the court shows that defendants imposed reasonable time, place, and manner restrictions.

### 1. The restriction was content-neutral

Restrictions on speech are content-neutral when they can be "justified without reference to the content of the regulated speech." *One World One Fam. Now v. City & Cnty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (quoting *Clark*, 468 U.S. at 293). Here, officer defendants' restriction on Solomon's speech was content-neutral as there is no evidence in the record suggesting that officer defendants targeted the content of Solomon's speech. The facts show that officer defendants were informed that the sidewalk was private property owned by Fashion Show Mall, and that Fashion Show Mall did not want any protestors, regardless of the subject or content of their protest, on their property. TAC, ECF No. 57 at ¶¶59–61. Consequently, officer defendants removed all protestors from the sidewalk. Solomon does not refute this point or present evidence to the contrary, but instead contends that defendants prevented him from relocating to

1 another location to film. ECF No. 128 at 15–16. Not only is this argument controverted by the
2 evidence showing the officers were willing to allow Solomon to move (TAC, ECF No. 57 at ¶67),
3 this argument concerns whether defendants' actions left Solomon with alternative means of
4 communication, not content-neutrality. Because the undisputed evidence demonstrates that the
5 officer defendants cleared the Fashion Show Mall sidewalk of all protestors—regardless of their
6 speech—as requested by the Fashion Show Mall, an action evincing content-neutrality,[9] I find
7 the restriction on Solomon's speech was content-neutral.

8         *2.  The restriction was narrowly tailored.*

9      A restriction on free speech is narrowly tailored if it does not "burden substantially more
10 speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.
11 Although sidewalks are open to the public, including for "expressive activities," the government
12 has a legitimate interest in "ensuring public safety and order, promoting the free flow of traffic
13 on streets and sidewalks, [and] protecting property rights[.]" *McCullen v. Coakley*, 573 U.S. 464,
14 486 (2014); *United States v. Grace*, 461 U.S. 171, 179 (1983). Here, the government took narrowly
15 tailored actions to protect this legitimate interest.

16      Solomon's camera and tripod "occupied over half of the sidewalk" and officers removed
17 Solomon to ensure the "unobstructed flow of pedestrian traffic" such that pedestrians would not
18 need to "traverse into the street or on the rocky hill next to the [Fashion Show Mall] sidewalk."
19 ECF No. 118 at 14–15. The officers' removal of Solomon from the sidewalk furthered the
20 legitimate government interest of ensuring public safety and order and promoting the free flow
21 of traffic on sidewalks. *McCullen*, 573 U.S. at 486. The fact that protestors were able to continue
22 to demonstrate across the street shows that officer defendants' did not substantially burden

24 [9] "[A] restriction on expressive activity is" content-neutral if it is "based on a non-pretextual reason
25 divorced from the content of the message attempted to be conveyed." *United States v. Griefen*, 200 F.3d 1256, 1260 (9th Cir. 2000).

speech more than necessary; as the Ninth Circuit has explained, "the test is not whether another option would be more optimal for [the speaker]: '[courts] are cautioned against invalidating government regulations for failing to leave open ample alternative channels unless the regulations foreclose[] an entire medium of public expression across the landscape of a particular community or setting.'" *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 980 (9th Cir. 2009) (quoting *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1074 (9th Cir. 2006)).

### 3.  The restriction left ample means of communication open.

A time, place, and manner regulation must leave open ample alternative channels for communication, *Clark*, 468 U.S. at 293, but this requirement "does not mean that there must be a channel where [plaintiffs] can express themselves in precisely the same manner." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 293 (6th Cir. 1998).

Here, the officer defendants suggested a reasonable alternative: that Solomon "could film the [p]rotest from the north side of the street or could film from the median located in the middle of the street where other media representatives filmed the event." ECF No. 118 at 15. Solomon argues that only two minutes elapsed between him asking Sergeant Fryman to adjudicate the dispute between himself and Fashion Show Mall security officers, and his arrest; Solomon does not contend that he could not have moved across the street. ECF No. 128 at 16. Further, ample alternative means of communication existed for Solomon to film the protests— he simply chose not to pursue those alternatives. Solomon could have easily walked to the center island, or the other side of the sidewalk, to film the protests. Indeed, the police officers encouraged Solomon to do so prior to arresting him, but Solomon seemed intent on filming from his specific location on Fashion Show Mall property. *See* Fryman BWC, Defs.' Ex. B, ECF No. 118 (manually filed) at 01:20–01:27.

In sum, because the officer defendants' restriction on Solomon's right to protest on the Fashion Show Mall sidewalk was content-neutral, narrowly tailored, and left open adequate alternative channels for communication, it was a permissible time, place, and manner restriction

on speech and did not violate the First Amendment. Accordingly, I grant defendants summary

judgment on Solomon's First Amendment claim against officer defendants.

> **B. The officer defendants did not violate Solomon's Fourth Amendment right to be free of unlawful searches and seizures (count three).**

Solomon claims that officer defendants violated his right to be free from unreasonable

searches and seizures under the Fourth Amendment because they seized him, and searched his

person and possession without reasonable suspicion that he committed a crime.[10] TAC, ECF No.

57 at ¶111.

The Fourth Amendment protects the right of the people to be free from unreasonable

searches and seizures. U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347, 88 (1967).

Searches and seizures "conducted outside the judicial process, without prior approval by judge

or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few

specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372

(1993) (simplified). However, the Supreme Court has long held that a seizure does not occur

simply because a police officer approaches an individual and asks a few questions. *Fla. v. Bostick*,

501 U.S. 429 (1991). Rather, so long as a reasonable person would feel free "to disregard the

police and go about his business," *California v. Hodari D.*, 499 U.S. 621, 628 (1991), the encounter is

consensual and law enforcement does not need reasonable suspicion. *Bostick*, 501 U.S. at 434. A

police encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual

nature. *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968) ("[N]ot all personal intercourse

between policemen and citizens involves 'seizures' of persons. Only when the officer, by means

of physical force or show of authority, has in some way restrained the liberty of a citizen may we

---

[10] In his response to defendants' motion for summary judgment, Solomon only asserts that his claim of unreasonable seizure survive and provides no evidence of when an unreasonable search of his person occurred. ECF No. 128 at 19. Solomon has abandoned his claim unreasonable search and the court grants summary judgment accordingly. *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

conclude that a 'seizure' has occurred."); *Fla. v. Royer*, 460 U.S. 491 (1983) (plurality opinion) (explaining that officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking if that person is willing to answer some questions, or by asking questions of that person if they are willing to listen.).

Solomon's encounter with law enforcement was initially consensual. After he was asked to move off the sidewalk by Fashion Show personnel, Solomon willingly called law enforcement over to him and engaged them in a conversation, presumably because he assumed he would be vindicated in his refusal to move. TAC, ECF No. 57 **at** ¶70; Fryman BWC, Defs.' Ex. B, ECF No. 118 (manually filed) at 00:26–00:59. It wasn't until Solomon refused to move off the sidewalk did the consensual encounter begin to transform. *Id.* Thus, defendants correctly contend that their initial detention of Solomon is justified because, but shortly thereafter developed reasonable suspicion[11] that Solomon was committing the crime of trespass when he refused to move. ECF No. 118 at 18.

Additionally, the officer defendants were correctly applying Nevada law. Nevada Revised Statute 207.200(1)(b) outlaws "[w]illfully [going] or [remaining] upon any land or in any building after having been warned by the owner or occupant thereof not to trespass." The body worn camera footage shows that Solomon willfully remained on the Fashion Show Mall sidewalk; as mentioned at length, both the Fashion Show Mall security officers as well as officer defendants gave him multiple opportunities to grab his camera equipment and move to an alternative location to film. Fryman BWC, Defs.' Ex. B, ECF No. 118 (manually filed) at 00:50–

---

[11] "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Miguel*, 368 F.3d 1150, 1153 (9th Cir. 2004) (internal quotation marks omitted), *overruled on other grounds by United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017) (en banc). At the time, the sidewalk at issue was not yet declared a public forum. Thus, the officers encounter with Solomon gave rise to reasonable suspicion, even if they were unaware (but should have foretold) that I would – six years later – declare the sidewalk to be a public forum. "[A] mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot." *Miguel*, 368 F.3d at 1153. "An officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion." *Id.* at 1153–54.

01:58. Solomon refused and entrenched himself, committing the act of willfully remaining upon the land on which he had been warned to leave. Thus, it was reasonable for officers to believe that Solomon was trespassing on private property in violation of NRS 207.200(1)(b).

Furthermore, it is clear that the officer defendants had a reasonable suspicion that Solomon obstructed the officers in the manner contemplated by NRS 197.190, which states that "[e]very person who, after due notice, shall refuse . . . to make or furnish any statement, report[,] or information lawfully required of the person by any public officer . . . shall be guilty of a misdemeanor." NRS 197.190. Here, Solomon disputes defendants' contention that he was argumentative; claiming that "all he did was verbally question Metro officers' authority to remove him from a sidewalk[.]" ECF No. 128 at 21. Even taking as true Solomon's contention that arguing with the officers is somehow materially different from verbally questioning the officers' authority, Solomon refused to identify himself, and the officer defendants warned Solomon about the law and ramifications of refusing to identify himself to a law enforcement officer. Contreras BWC, Defs.' Ex. C, ECF No. 118 (manually filed) at 04:27–05:13. He again refused to identify himself, prompting the officers to detain him for failure to identify pursuant to NRS 197.190. *Id.* at 05:13–5:49. Solomon's refusal to identify himself also gave rise to a probable cause arrest. *See United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984) (explaining that reasonable suspicion may ripen into probable cause to arrest through the occurrence of facts or circumstances after the stop).

Nevada law also requires police officers to detain any individual who refuses to sign that citation. NRS 171.177 ("[W]henever any person is detained by a peace officer for any [misdemeanor] violation . . . the person **must** be taken without unnecessary delay before the proper magistrate . . . in the following cases . . . when the person is issued a misdemeanor citation by an authorized person and refuses to give a written promise to appear in court.") (emphasis added). Even after the officers had detained Solomon, they offered Solomon the opportunity to sign a citation, even telling him that he had the choice of signing the citation or

being detained and going to jail. Fryman BWC, Defs.' Ex. F, ECF No. 118 (manually filed) at 00:51–00:59. Solomon refused to sign the citation despite their advisement that signing the citation was not an admission to guilt. *Id.* at 01:01–01:10. Solomon refused to sign the citation in violation of NRS 171.177 which then mandated his detainment.

Accordingly, there is no genuine issue of material fact regarding Solomon's Fourth Amendment claim that survives defendants' motion. The officer defendants did not violate Solomon's Fourth Amendment right to be free from unlawful searches and seizures and therefore defendants' motion for summary judgment on the third claim for relief is granted.

### C.  The officer defendants did not use excessive force (claim eight).

Defendants also move for summary judgment on Solomon's excessive force claim, arguing that any force used to effect an unlawful arrest violates the Fourth Amendment ECF No. 118 at 22. Solomon argues that the officer defendants used unreasonable force in arresting him because officer defendants detained him without reasonable suspicion and arrested him without probable cause and "any force[] used to effect and maintain an unlawful arrest is an unlawful violation of the Fourth and Fourteenth Amendments[.]" TAC, ECF No. 57 at ¶139. However, "[b]ecause the excessive force and false arrest inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). Thus, even if Solomon's claim that his arrest was unlawful is true, it does not bear on an excessive force claim.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Thomas v. Dillard*, 818 F.3d 864, 889 (9th Cir. 2016) (internal quotation marks and citation omitted). "When weighing an excessive force claim, summary judgment is appropriate if the court 'concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Harmon v. City of*

*Pocatello*, 854 F. App'x 850, 853 (9th Cir. 2021) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. at 386, 396 (1989).

Solomon also argues that the officers' unwanted grabbing of his arm and subsequent handcuffing was excessive in violation of the Fourth Amendment. ECF No. 128 at 22–23. Defendants argue that summary judgment is appropriate because an officer "merely handcuffing a noncompliant plaintiff does not amount to excessive force, especially when the plaintiff presents no evidence that he . . . suffered actual injuries."[12]  ECF No. 118 at 22.

The evidence shows that Sergeant Fryman grabbed Solomon's arm to initiate arrest, and Solomon was handcuffed by Officer Contreras. Fryman BWC, Defs.' Ex. B, ECF No. 118 at 02:30–03:04. Sergeant Fryman used minimal force to initiate the arrest, and Officer Contreras used minimal force in handcuffing Solomon; I find that the type of force was objectively reasonable. *See Harmon*, 854 F. App'x at 853 (finding that objectively reasonable force was used when an officer grabbed the plaintiff's arm in order to initiate their arrest); *see also Wesson v. Linde*, 2021 U.S. Dist. LEXIS 158851 (E.D. Cal. Aug. 20, 2021) ("The use of handcuffs during an arrest is quite common and often a standard practice and, [o]rdinarily the use of handcuffs during an arrest is a very low quantum of force that will not constitute excessive force." (internal quotations and citations omitted); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (the nature and degree of physical contact are relevant to a court's analysis). Further, the "risk of harm and the actual harm experienced," are also relevant to my consideration. *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012). Solomon does not articulate any risk or actual harm that resulted from the alleged excessive force.

---

[12] Solomon claims that he need not prove, or even allege that he was injured. ECF No. 128 at 23.

Solomon fails to meet his burden showing specific facts that there is a genuine issue for trial regarding his Fourth Amendment claim of excessive force, so I grant defendants' motion for summary judgment on this claim.

### D. The officer defendants did not violate Solomon's rights under the Fourteenth Amendment (claim five).

Defendants argue that summary judgment is appropriate on Solomon's Equal Protection claim because there is a lack of evidence to support the claim. ECF No. 118 at 24. I agree. The Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated people be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state a claim under § 1983 for an equal protection violation, a plaintiff must show "that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren*, 152 F.3d at 1194–95 (citing *Washington v. Davis*, 426 U.S. 229, 239–240 (1976)). A plaintiff has the burden of making a prima facie showing that defendants acted with intent to discriminate against him because of his race and that other similarly situated individuals were treated differently. *See, e.g., Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Here, Solomon argues that he, an African American photojournalist, was the only one arrested and detained for filming on the Fashion Show Mall sidewalk, while other non-African American individuals were permitted to do so. TAC, ECF No. 57 at 22. Defendants allege that Sergeant Fryman's body worn camera footage shows that he told all individuals that he encountered (regardless of race) to move along the sidewalk or go across the street because the Fashion Show Mall was not permitting people to protest on its sidewalk. ECF No. 118 at 24. This is supported by Sergeant Fryman's body worn camera footage. *See* Fryman BWC, Defs.' Ex. M, ECF No. 118 (manually filed) at 2:44–3:11 (Sergeant Fryman explaining to a group of seemingly Caucasian protestors that the Fashion Show Mall is private property, that they cannot protest on the sidewalk, and asking the protestors to move across the street); *see also*

Fryman BWC, Defs.' Ex. L, ECF No. 118 (manually filed) at 2:20–2:40 (explaining the same to another person who appears Caucasian).

Solomon fails to show the officer defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. The difference between Solomon and the other individuals that were not arrested is not Solomon's race, but rather the fact that every other individual voluntarily left the Fashion Show Mall sidewalk, whereas Solomon refused to leave. Solomon's argument in response is no more than a threadbare assertion of the elements of an Equal Protection violation; he does not point to any time in the body worn camera footage, or any other admissible evidence, demonstrating that defendants acted with an intent or purpose to discriminate against him based upon his protected class.

At the summary judgment hearing, Solomon argued that he was singled out from the outset as an agitator by Sergeant Fryman. But this argument is wholly unsupported by the deposition transcript, Sergeant Fryman Dep., Pl.'s Ex. 2, ECF No. 128-2 at 26–27, and the body worn camera footage, Fryman BWC, Defs.' Ex. B, ECF No. 118 (manually filed). The video footage shows Sergeant Fryman was called over by Solomon; he did not seek Solomon out on his own accord. TAC, ECF No. 57 at 13, ¶¶63–70. It was not until Solomon walked away to reset up his filming equipment further down—but still on—the Fashion Show Mall sidewalk that Sergeant Fryman identified Solomon as a potential agitator. Sergeant Fryman Dep., ECF No. 128-2 at 26–27. Therefore, for the reasons stated above, I grant summary judgment in the officer defendants' favor Solomon's fifth claim for relief.[13]

---

[13] Defendants claim that the officer defendants are entitled to qualified immunity because Solomon did not suffer a constitutional violation. ECF No. 118 at 28. Qualified immunity is implicated after a constitutional violation has been established against an individual officer. *Crema v. Las Vegas Metro Police Dep't*, 2023 WL 6262556, at *12 (D. Nev. Sept. 25, 2023). Since I find that the officer defendants did not violate a constitutional right, I need not analyze whether they are entitled to qualified immunity.

**E. Solomon's *Monell* claims against LVMPD fail for failing to establish an underlying constitutional violation under the First or Fourth Amendments, (claims one, two, and three).**

It is well established that the only basis for a plaintiff to bring a § 1983 claim against a municipality is pursuant to *Monell*. *Hyer v. City and Cnty. of Honolulu*, 2020 U.S. Dist. LEXIS 223621, at *16 (D. Haw. Nov. 30, 2020). To establish municipal liability under *Monell*, plaintiffs must plausibly allege that "(1) [they were] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [their] constitutional right[s]; and (4) the policy was the moving force behind the constitutional violation[s]." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The policy can be an official policy, a "pervasive practice or custom," a failure to train or supervise, or an "act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Liability under a theory of respondeat superior is insufficient to confer § 1983 municipal liability. *Id.* at 603. Thus, municipal liability attaches only when execution of a government policy or custom inflicts a plaintiff's injury. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 694 (1978); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Solomon asserts two claims against the LVMPD: (1) the LVMPD violated his right to free speech and freedom of the press under the First Amendment (claim two); and (2) the LVMPD violated his right to be free from unlawful searches and seizures under the Fourth Amendment (claim three). TAC, ECF No. 57 at ¶¶105–113. Defendants allege that all claims against the LVMPD must be dismissed because Solomon failed to establish a legitimate *Monell* claim. ECF No. 118 at 28. I agree. *Monell* requires Solomon to demonstrate that he suffered a constitutional violation at the hands of an LVMPD policy. *Horton by Horton*, 915 F.3d at 602–03; *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000) ("To hold a [] department liable for the actions of its officers, the [plaintiffs] must demonstrate a constitutional deprivation[.]"). As discussed *supra*, Solomon has failed to establish any constitutional violation,

1  and fails to meet his burden establishing a policy that would implicate *Monell*. Accordingly, I find
2  no *Monell* violation and grant the LVMPD summary judgment on claims one, two, and three.

3  **IV.   Conclusion**

4          IT IS THEREFORE ORDERED that the defendants' motion for summary judgment
5  **[ECF No. 118]** is **GRANTED**.

6          The Clerk of Court is kindly directed to enter judgment accordingly and to CLOSE THIS
7  CASE.

8          Dated: November 9, 2023

9          _____
10                                         Cristina D. Silva
                                           United States District Judge
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26