NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 12 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NEBYOU SOLOMON, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT; JOHN PELLETIER; RICHARD E. MAUPIN; RYAN FRYMAN; JUAN CONTRERAS; ALLEN PAVESE; BRANDON MEADS; JOSEPH LOMBARDO, <br><br> Defendants - Appellees. | No. 23-4166 <br><br> D.C. No. 2:19-cv-00652-CDS-DJA <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Cristina D. Silva, District Judge, Presiding

Argued and Submitted May 14, 2025
Phoenix, Arizona

Before: RAWLINSON, BUMATAY, and SANCHEZ, Circuit Judges.

Plaintiff Nebyou Solomon appeals the district court's order granting Defendants' motion for summary judgment against Solomon on his First, Fourth,

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and Fourteenth Amendment claims, as well as his claims under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). We affirm.

"We review the [district court's] grant of summary judgment de novo, using the same standard as the district court" under Federal Rule of Civil Procedure 56(c). *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

1. Defendants did not violate Solomon's First Amendment right "to film an event of public significance." Even assuming, as the district court did, that the Fashion Show Mall ("FSM") sidewalk constitutes a public forum, the actions by Defendants constituted a reasonable time, place, and manner restriction.

FSM informed Defendant Las Vegas Metropolitan Police Department ("LVMPD") that "they did not want any protest related activity on their property." This restriction on protest-related activity on the FSM sidewalk was "justified without reference to the content of the regulated speech," as it was issued against all involved in protest-related activity, regardless of the subject or content of their message. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). This restriction was narrowly tailored because it did not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). There is a legitimate government interest in "ensuring public safety and order, promoting the free flow of traffic on

streets and sidewalks, [and] protecting property rights." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376 (1997)).  LVMPD's instruction that Solomon vacate his location on the sidewalk and move west towards an alternative filming location narrowly promotes that interest.  Body worn camera footage shows Solomon's large camera tripod obstructed over half of the sidewalk, and pedestrians would potentially be forced to move through traffic or up a rocky incline to get past Solomon.  Finally, this restriction allowed ample room for alternative means of communication.  Solomon does not dispute that he could have filmed the protest from across the street.  Further, he could have filmed from the center median.  Rather than pursue either of those alternatives, Solomon violated the officers' instructions and concedes that he intended to continue filming in a restricted area.

2.  Solomon was not retaliated against for exercising his First Amendment rights.  To succeed on a First Amendment retaliation claim, Solomon must provide evidence that chilling Solomon's speech was "a substantial or motivating factor in the defendant's conduct." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (simplified).  But the record shows Defendants' motivations in arresting Solomon were content neutral.

As explained below, Defendants had probable cause to believe Solomon was trespassing in violation of Nev. Rev. Stat. § 207.200.  But rather than comply with

Sgt. Fryman's instruction to pick up his camera equipment and move west down the sidewalk so as not to be trespassing, Solomon told officers he intended to film elsewhere on the FSM property and moved east. Only after the officers developed probable cause to believe Solomon was trespassing did they arrest him. People have a First Amendment "right verbally to challenge the police." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019 (9th Cir. 2015) (simplified). They do not, however, possess a right to disobey police orders. Nothing in the record suggests Defendants were motivated to arrest Solomon due to his First Amendment activity.

      3.    Defendants did not violate Solomon's Fourth Amendment rights. Defendants had probable cause to believe Solomon was trespassing. *See* Nev. Rev. Stat. § 207.200. At the time of the arrest, the sidewalk at issue had not yet been declared a public forum. And FSM officials informed Solomon that he could not film on their property and had to move. Sgt. Fryman also informed Solomon the property was private and he had to leave. So at that moment, Defendants had probable cause to arrest Solomon for trespassing. Defendants also had probable cause to arrest Solomon for obstructing a police officer by refusing to identify himself. *See* Nev. Rev. Stat. §§ 171.123(3), 197.190. Ofc. Contreras informed Solomon that it was a crime in Nevada to refuse to identify to a police officer and Solomon refused to do so.

4. Solomon was not exposed to excessive force. It was "objective[ly] reasonable[]" for Defendants to grab Solomon's arm and place him in handcuffs as part of his lawful arrest. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The force used here was minimal and Solomon does not claim any injury.

5. Defendants did not violate Solomon's Fourteenth Amendment Equal Protection Clause rights. Solomon cannot identify a similarly situated individual who was treated differently than him. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The white man who was taking pictures of the protest from the FSM sidewalk was argumentative with officers, but unlike Solomon, he complied with their order to continue moving westward along the FSM sidewalk so as not to trespass. None of the individuals identified by Solomon as "similarly situated" to him traveled east on FSM's sidewalk in violation of a police officer's order—only Solomon did. Further, there is no evidence in the record that any individuals other than Solomon were blocking the FSM sidewalk with their equipment.

6. Solomon's *Monell* claims fail because he did not suffer any constitutional injury. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).

**AFFIRMED.**

FILED

JUN 12 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Solomon v. Las Vegas Metro. Police Dep't, et al.*, No. 23-4166

SANCHEZ, Circuit Judge, concurring in part and dissenting in part:

I agree that the district court did not err in granting summary judgment for Defendants as to Solomon's claims under the Fourth and Fourteenth Amendments. Given Solomon's concession at oral argument that he intended to continue filming on the Fashion Show Mall ("FSM") sidewalk in defiance of Sgt. Fryman's order to leave, Defendants had probable cause to believe that Solomon was trespassing on private property. *See* Nev. Rev. Stat. § 207.200(1)(b) (defining trespass, in relevant part, as "*Willfully* go[ing] or remain[ing] upon any land" (emphasis added))[1] Nor has Solomon established a triable dispute whether Defendants used unreasonable force in effectuating the arrest. Finally, Solomon's Fourteenth Amendment claim is foreclosed by his inability to identify a similarly situated individual who was not arrested after willfully failing to comply with an officer's orders to leave.

I respectfully dissent from the majority's analysis of Solomon's causes of action under the First Amendment and municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In my view, Solomon presented sufficient evidence to establish a triable dispute

---

[1] As the majority notes, no court had declared at the time of Solomon's arrest that the FSM sidewalk was a public forum.

whether his First Amendment rights were violated by Defendants' conduct. The district court also erred by failing to address Solomon's First Amendment retaliation claim, which was briefed below and presents disputed questions of material fact. I would also remand for the district court to evaluate Solomon's *Monell* claim in the first instance given the absence of any policy by the Las Vegas Metropolitan Police Department ("LVMPD") governing the treatment of photojournalists covering public events.

I.

The starting point of our First Amendment analysis is the nature of the forum at issue. *See Camenzind v. Cal. Exposition & State Fair*, 84 F.4th 1102, 1107 (9th Cir. 2023). "Traditional examples of public fora include streets, parks, and sidewalks—publicly owned spaces which, for 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 1108 (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Solomon had a First Amendment right to film on the FSM sidewalk because, as the district court concluded, the sidewalk is a traditional public forum. *See Venetian Casino Resort, LLC v. Loc. Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 943–44 (9th Cir. 2001). Defendants do not take issue with this determination.

We have also recognized First Amendment protection for journalists

covering public events. *Project Veritas v. Schmidt*, 125 F.4th 929, 945 (9th Cir. 2025) (en banc) ("[W]e recognized that a man who created an audiovisual recording of a public protest for a local television station had a 'First Amendment right to film matters of public interest.'") (quoting *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995)); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018). On the day of his arrest, Solomon was employed by a television station as a photojournalist and was dispatched to create an audiovisual recording of a political protest.

In a public forum, the government may impose "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation and internal quotation marks omitted). Whether Solomon's detention and arrest was a reasonable restriction of his First Amendment rights is a matter for a jury to decide because there are genuine disputes of material fact as to each factor of the time, place, and manner analysis.

First, a reasonable juror could find that Solomon's arrest was not content neutral. "The principal inquiry in determining content neutrality . . . is whether the

government has adopted a regulation of speech because of disagreement with the message it conveys." *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017) (quoting *Ward*, 491 U.S. at 791). Solomon contends that he had a First Amendment right to film an ongoing protest in a public forum as well as to voice his disagreement with Sgt. Fryman about his right to be there. Solomon presented sufficient evidence from which a reasonable juror could find that he was arrested because he challenged Sgt. Fryman's characterization of the sidewalk as private property and because Sgt. Fryman perceived him to be an "agitator" or protester, rather than a photojournalist.

  Second, a reasonable juror could find that Solomon's detention and arrest was not narrowly tailored because it "burden[ed] substantially more speech than [wa]s necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. The majority concludes that the presence of Solomon's tripod impaired the government's interest of ensuring public safety and the free flow of pedestrian traffic, because "pedestrians would potentially be forced to move through traffic or up a rocky incline." This *post hoc* explanation finds no support in the record. At the time of the arrest, the officers on the scene never once mentioned the size of the tripod as a basis for ordering Solomon to leave. And whether Solomon's tripod "potentially" obstructed the flow of pedestrian traffic is a disputed factual question. Defendants do not point to any evidence in the record that a pedestrian was in fact

impeded by the tripod. Regardless, even if Solomon's tripod initially posed an obstruction, Solomon had already removed his tripod by the time Sgt. Fryman detained him. Accordingly, a reasonable jury could conclude that Defendants burdened substantially more speech than was necessary because the detainment and arrest of Solomon did not further a government interest that had already been vindicated.

Finally, a reasonable juror could find that Solomon's arrest did not "leave open ample alternatives for communication." *Id.* at 791. Solomon raises a genuine dispute whether any alternatives were left open to him given that he was arrested within two minutes of his disagreement with Sgt. Fryman and while he was walking away to find an alternative filming location.

These are questions of material fact best resolved by a jury. Accordingly, I would reverse the grant of summary judgment on Solomon's First Amendment speech claim.

## II.

Solomon's First Amendment retaliation claim should be remanded for the district court to assess in the first instance. The district court failed to address the retaliation claim in its order granting summary judgment, even though both parties provided briefing on the elements of a retaliation claim. Defendants' motion for summary judgment argued that Solomon failed to establish that Defendants

"'deterred or chilled' the plaintiff's speech and 'such deterrence was a substantial or motivating factor in the defendant's conduct.'"  Solomon's opposition asserted that his speech was "deterred" and that his speech was a "substantial or motivating factor" for Defendants' conduct.  These arguments plainly address the elements of a retaliation claim, *see Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010), and the district court should have analyzed this independent First Amendment claim.

### III.

Finally, I would reverse the district court's grant of summary judgment on Solomon's *Monell* claim.  "To establish municipal liability under *Monell*, [a plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [a plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation."  *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020).  The district court granted summary judgment on the grounds that Solomon "failed to establish any constitutional violation, and fails to meet his burden establishing a policy that would implicate *Monell*."  Neither ground holds.

As discussed, a reasonable juror could find that Solomon's First Amendment rights were violated by Defendants' conduct.  Additionally, Solomon alleged that LVMPD's lack of training on the First Amendment rights of the media constituted

a policy implicating *Monell*. The record indicates that LVMPD did not "have any policies" or "training" "pertaining to interactions with members of the media at protest events" at the time of the incident. "[C]ontinued adherence" to a "deficient training program" that policymakers "know or should know has failed to prevent tortious conduct by employees may establish . . . the 'deliberate indifference' [] necessary to trigger municipal liability." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (internal citation and quotation marks omitted).

*** 

Because Solomon presents triable questions of material fact with respect to his First Amendment and *Monell* claims, I respectfully dissent from the majority's disposition of those claims.

7

23-4166